## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES JACOB JR., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL,[1] <br> Acting Commissioner of Social Security, <br><br> Defendant. | Civil Action No. 15-600 (DAR) |

## **MEMORANDUM OPINION**

This case was assigned to the undersigned United States Magistrate Judge for all purposes. *See* 06/23/2015 Referral (ECF No. 12).[2] Currently for determination by the undersigned are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 15) and Defendant's Motion for Judgment of Affirmance and in Opposition to Motion for Judgment of Reversal ("Defendant's Motion") (ECF No. 16). Upon consideration of the motions, the memoranda in support thereof and in opposition thereto, the administrative record ("AR") (ECF No. 6), and the entire record herein, Plaintiff's motion will be granted in part and denied in part, and Defendant's motion will be denied.[3]

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, who currently serves as the Acting Commissioner of Social Security for the Social Security Administration, will be substituted for the former Acting Commissioner, Carolyn W. Colvin.

[2] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Consent to Proceed before US Magistrate Judge for All Purposes (ECF No. 10) at 1.

[3] The undersigned notes that while Plaintiff's Motion is penned as a motion for summary judgment, made pursuant to Fed. R. Civ. P. 56, the District of Columbia Circuit has established that, on review of a determination by the Social Security Administration, application of the summary judgment standard is inappropriate. *See Igonia v.*

**BACKGROUND**

Plaintiff Charles Jacob Jr. brings this action seeking judicial review of a final decision by Defendant Acting Commissioner of the Social Security Administration, pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* ("SSA"). Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memorandum") (ECF No. 15) at 1.

*Procedural History*

On April 26, 2011, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability since January 1, 2000. AR at 180-87, 203. His claims were denied initially and upon reconsideration. AR at 73-115.

Thereafter, Plaintiff requested an administrative hearing, which took place on June 3, 2013. AR at 15. On August 8, 2013, an Administrative Law Judge ("ALJ") issued a determination, finding that Plaintiff was not disabled. AR at 29. On February 2, 2015, the Commissioner denied Plaintiff's request for a review of the ALJ's decision. AR at 1.

*Summary of the ALJ's Ruling*

On August 8, 2013, the ALJ issued a written opinion, concluding that Plaintiff (referred to by the ALJ as "the claimant") was "not disabled under section 1614(a)(3)(A) of the Social Security Act." AR at 29. Specifically, the ALJ made the following eleven summary findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2000.

2. The claimant has not engaged in substantial gainful activity since January 1, 2000, the alleged onset date.

---

*Califano*, 568 F.2d 1383, 1389 (D.C. Cir. 1977). Thus, the undersigned will consider Plaintiff's Motion as a request for judgment of reversal of the administrative decision.

3. The claimant has the following severe impairments: degenerative disc disease and affective disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform simple, unskilled (SVP 1 or SVP 2) light work as defined in 20 CFR 404.1567(b) and 416.967(b).

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on December 11, 1964, and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has a marginal education and is able to communicate in English.

9. Transferability of job skills is not an issue because claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2000, through the date of this decision.

AR at 18-29.

**CONTENTIONS OF THE PARTIES**

Plaintiff requests that this court, upon review of the decision of the Social Security Administration, find that the ALJ erred and award Supplemental Security Income benefits to

Plaintiff for the duration of his disability, or in the alternative, remand this case for further proceedings. Plaintiff's Memorandum at 1.

First, Plaintiff argues that the ALJ erred by "disregarding the opinion of [his] treating physician regarding his degenerative disc disease in favor of his own lay interpretation of medical tests[.]" Plaintiff's Memorandum at 11. Plaintiff contends that the ALJ was obligated to conduct the appropriate treating physician analysis to determine whether controlling weight should be accorded to the RFC assessment of Plaintiff's treating physician, Dr. Siham Mahgoub. Plaintiff notes that because the ALJ erroneously believed the RFC assessment was completed by a nurse practitioner, rather than a treating physician under the statutory definition, he discounted Dr. Mahgoub's RFC assessment and found that it did not originate from an acceptable medical source. *Id*. Plaintiff contends, had the ALJ properly conducted the treating physician analysis and accorded the appropriate weight to Dr. Mahgoub's opinion that Plaintiff's "back condition limited him to, at most, occasionally lifting less than 10 pounds and standing or walking less than two hours in an eight hour workday," the ALJ should have restricted Plaintiff's RFC to "sedentary work" after evaluating his functional capacity. *Id*. at 12-13.

Second, Plaintiff argues that "[t]he ALJ also committed reversible error by failing to consider the substantial functional limitations caused by [Plaintiff's] documented mental health conditions and learning disabilities." *Id*. at 15. In support of this contention, Plaintiff asserts that the record demonstrated his severely limited ability to interact with others. *Id*. Moreover, Plaintiff notes that he has a Global Assessment of Functioning ("GAF") score of 45, which signifies a "serious psychiatric illness[,]" in addition to depression, and audio and visual hallucinations. *Id*. at 15-16. Plaintiff argues that these difficulties are further exacerbated by his learning disability, as evidenced by his functional illiteracy and inability to do basic math calculations. *Id*. at 16.

Given these circumstances, Plaintiff contends that the ALJ erred in finding that Plaintiff had only "some cognitive limitations that could be accounted for by restricting him to unskilled work." *Id.* at 17.

Third, Plaintiff contends that the ALJ erred in classifying his HIV condition as "non-severe," and thereby failing to analyze his condition under Step 3 of the sequential evaluation process. *Id.* Plaintiff avers that as a result of his HIV condition, he has had "two courses of shingles" as well as bronchitis COPD, and other respiratory infections. *Id.* at 19. Plaintiff contends that the presence of these complications obligated the ALJ to conduct a Step 3 analysis of his HIV condition to determine whether his condition met one of the statutory listings. *Id.* at 17-19.

Fourth, Plaintiff contends the ALJ erred in "failing to pose proper hypothetical questions to the vocational examiner" and then relying on that examiner's testimony despite its inconsistency with the Dictionary of Occupational Titles ("DOT"). *Id.* at 21. Plaintiff argues that the ALJ, in posing the hypothetical questions, "failed to properly consider Mr. Jacob's mental and cognitive limitations in considering the availability of jobs in the local economy." *Id*. In addition, Plaintiff asserts that "the jobs titles listed by the vocational expert are not consistent with the DOT." In relevant part, Plaintiff states:

> In the first instance, the job titles listed by the vocational expert are ***not*** consistent with the *DOT*. The job title for the *DOT* number given for "Machine Tender" is actually "CUTTING MACHINE TENDER, DECORATIVE"; the job title for "Packer" is "ROUTING CLERK"; the job title for "Bench Worker" is "TABLE WORKER"; and the job title for "Quality Control Worker" is "CHECK WEIGHER (ORDNANCE)." *See* Hrg. Tr. (Dkt. 6-2), at 63-64 (referencing DOT Job Titles #775.685-010; #222.687-022; #783.687-030; #737.687-026). The ALJ nonetheless concluded that the vocational examiner's testimony, including his claim that certain numbers of the listed jobs "existed" in the local economy, was "consistent" with the *DOT*. ALJ Dec. (Dkt. 6-2), at 11.

*Id.* at 21.

In response to Plaintiff's contentions, Defendant avers that the ALJ did not err in finding that Plaintiff was not disabled. Defendant's Memorandum in Support of Her Motion for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal ("Defendant's Memorandum") (ECF No. 17) at 1. Defendant contends that all of the ALJ's findings were supported by substantial evidence. *Id*. First, Defendant argues that the ALJ provided several reasons for affording Dr. Mahgoub's opinion little weight, thus meeting the necessary burden. *Id.* at 12. Defendant "concedes that the ALJ mistakenly thought Dr. Mahgoub's March 4, 2013 opinion was authored by a nurse practitioner and, therefore, did not consider it under the regulations pertaining to treating sources." *Id*. That said, Defendant avers that the ALJ's mistake was "harmless error" considering sufficiency of the ALJ's analysis. *Id*. Moreover, Defendant contends that Plaintiff's medical record considering his back pain is more consistent with the ALJ's analysis than Dr. Mahgoub's opinion. *Id*. at 13.

Second, Defendant argues that the ALJ properly considered the totality of Plaintiff's mental impairments. *Id*. at 14. Specifically, Defendant contends:

> The ALJ considered Plaintiff's social functioning, finding that he had no difficulties in this area. The record supports the ALJ's finding. The ALJ pointed out that Plaintiff was cooperative during his mental status examinations, and reported that he stayed with "lady friends[.]" Furthermore, Plaintiff showed no uncooperative behavior with physicians and was highly motivated to advance himself educationally and vocationally. Plaintiff told Dr. Kaiser that although he preferred to be alone, he got along with others and he had no problems relating to co-workers and supervisors. Based on these factors, the ALJ reasonably found that Plaintiff's social functioning would not impede his ability to work. Furthermore, the VE testified that even if Plaintiff were unable to have no contact with the public and no more than superficial contact with supervisors and co-workers, he could still perform the jobs of machine tender, bench worker, and quality control worker. So even if Plaintiff arguably had some limitations with regard to his social functioning, he would still be able to perform the identified occupations and, therefore, this limitation would not undermine the

> foundation for the expert's ultimate conclusion that there are alternative jobs appellant can do.

*Id.* at 15 (internal citations and quotation marks omitted). In addition, Defendant counters Plaintiff's argument regarding his GAF score, claiming that "the GAF scale has been eliminated from the newest edition of the DSM because of factors including its conceptual lack of clarity and questionable psychometrics in routine practice." *Id.* Defendant also avers that contrary to Plaintiff's contention, there is no evidence in the record that Plaintiff is functionally illiterate and that evaluations estimated his intelligence to be "below average" as opposed to "significantly below average." Defendant concludes by stating "[t]o the extent that the evidence supported some impairment in Plaintiff's cognitive functioning, the ALJ accounted for it by limiting Plaintiff to simple, unskilled work[.]" *Id.* at 17.

Third, Defendant argues that the ALJ properly considered Plaintiff's HIV condition. *Id.* In support, Defendant contends that the ALJ accurately addressed the opinion of Dr. John Hogan, Plaintiff's infectious disease specialist, who consistently reported that Plaintiff's HIV/AIDS condition was asymptomatic. *Id.* Moreover, Defendant states that "Dr. Hogan indicated that although Plaintiff was HIV positive, no opportunistic infection had occurred, and Plaintiff had no other complications such as persistent unresponsive diarrhea, herpes, cognitive loss, restrictions in social functioning, or restrictions in activities of daily living[.]" *Id.* (internal citation omitted). Therefore, Defendant contends that the evidence supported the ALJ's finding that Plaintiff's condition was not severe. *Id.* at 18. Defendant argues that Plaintiff's contentions regarding his shingles episodes and various breathing issues were insufficient to rebut this conclusion. *Id.* at 18-20.

Fourth, Defendant contends that Plaintiff's argument with regard to the vocational expert is without merit. *Id.* at 20. Defendant contends that the ALJ's hypothetical questions to the

vocational expert properly framed the totality of Plaintiff's residual functional capacity. *Id.* at 20-21. Defendant concedes that two of the job titles listed by the vocational expert did not adequately correspond with the titles listed in the DOT. *Id.* at 22-23. However, Defendant argues that this mistake was "harmless error[,]" in that two of the job titles listed by the vocational expert did correspond with the DOT listings. *Id.* at 23. Therefore, Defendant contends that there were still numerous jobs in the economy even after omitting the erroneous titles. *Id.*

Plaintiff, in his reply, reiterates his previous arguments in favor of reversal or remand. Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Reply") (ECF No. 19). Additionally, Plaintiff argues that Defendant's concessions with regard to various errors committed by the ALJ further justify such actions. *Id.* at 2-3, 6, 8.

**STATUTORY FRAMEWORK**

The Social Security Act established a framework to provide "disability insurance benefits" to eligible individuals and "to provide supplemental security income to individuals who have attained age 65 or are blind or disabled." 42 U.S.C. §§ 423, 1381, 1381a. The statute defines disability for non-blind individuals as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" § 423(d)(1)(A); 20 C.F.R. § 416.905. A disabled individual is eligible for supplemental security income if he or she meets additional statutory requirements concerning "income" and "resources." 42 U.S.C. § 1382(a). The Social Security Administration has promulgated regulations, pursuant to the statue, outlining a five-step process for evaluating disability of adults. *See* 20 C.F.R. §§ 404.1520, 416.920.

First, the agency evaluates whether the claimant is "doing substantial gainful activity[;]" if so, the agency concludes that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), (b); 416.920(a)(4)(I), (b). If not, the agency determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . . ." §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." §§ 404.1520(c); 416.920(c). If deemed severe, the agency then determines whether the impairment "meets or equals one of [the] listings" and the duration requirement, and if so, the agency concludes that the claimant is disabled. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d). The "listings" refers to a "listing of impairments" which "describes for each of the major body systems impairments that [the agency] consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." § 404.1525(a).

Next, the agency assesses the claimant's "residual functional capacity and . . . past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f). Residual functional capacity is "the most [an individual] can still do despite . . . physical and mental limitations," from all medically determinable impairments "that affect what [he or she] can do in a work setting." § 404.1545. If the claimant has the residual functional capacity to perform his or her "past relevant work," the claimant is deemed not disabled. § 404.1560(b)(3). Otherwise, the agency assesses the claimant's "residual functional capacity and . . . age, education, and work experience to see if [he or she] can make an adjustment to other work." §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g). If the claimant can adjust to other work that "exist[s] in significant numbers in the national economy[,]" the agency determines that the individual is not disabled. § 404.1560(c). However,

if the claimant cannot make such an adjustment, the agency finds that the individual is disabled. §§ 404.1520(g)(1), 416.920(g)(1).

**APPLICABLE STANDARD**

Claimants may seek judicial review in district court of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . ." 42 U.S.C. § 405(g). "The Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted). "In other words '[a] district court's review of the [Social Security Administration's] findings of fact is limited to whether those findings are supported by substantial evidence.'" *Little v. Colvin*, 997 F. Supp. 2d 45, 49 (D.D.C. 2013) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The test requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Id.* (citation omitted) (internal quotation marks omitted).

The United States Court of Appeals for the District of Columbia Circuit has observed that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008), and that "a reviewing judge must uphold the ALJ's legal 'determination if it . . . is not tainted by an error of law.'" *Isaraphanich v. Comm'r of Soc. Sec. Admin.*, No. 12-0700, 2013 WL 3168141, at *3 (D.D.C. June 21, 2013) (citations omitted); *see also Nicholson v. Soc. Sec. Admin.*, 895 F. Supp. 2d 101, 103 (D.D.C. 2012) (citation omitted) (internal quotation marks and alteration omitted) (noting that the inquiry upon judicial

review is whether the ALJ has analyzed all evidence and has sufficiently explained the weight he had given to obviously probative exhibits); *see also Little*, 997 F. Supp. 2d at 49 (citations omitted) (noting that the court "is not to review the case 'de novo' or reweigh the evidence."). Moreover, "[t]he ALJ has a duty to explain why they either ignored or rejected contradictory evidence." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 18 (D.D.C. 2009) (internal citation omitted). "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012) (citation omitted); *see also Garnes v. Colvin*, No. 12-1090, 2013 WL 5297221, at *4 (D.D.C. Aug. 27, 2013).

This Court applies the "treating physician rule[,]" which establishes that a treating physician's report is "binding on the fact-finder unless contradicted by substantial evidence." *Contreras v. Comm'r of Soc. Sec.*, No. 15CV1277TSCDAR, 2017 WL 943900, at *1 (D.D.C. Mar. 9, 2017); *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015); *Espinosa v. Colvin*, 953 F. Supp. 2d 25, 32 (D.D.C. 2013); *see also* 20 C.F.R. § 404.1527 (c)(2) (stating that when "a treating [physician]'s opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [plaintiff's] case record, [SSA] will give it controlling weight") (citations omitted). "If an ALJ rejects a treating physician's opinion, the ALJ bears the burden of explaining why he has rejected the treating physician's opinion and how the doctor's assessment is contradicted by substantial evidence." *Espinosa*, 953 F. Supp. 2d at 32.

**DISCUSSION**

Plaintiff has met his burden in demonstrating that the ALJ erred with regard to his analysis of the opinion of Plaintiff's treating physician. The record reflects that Dr. Siham Mahgoub, one of Plaintiff's treating physicians, treated Plaintiff in 2013 and evaluated his back condition. AR at 604. On March 4, 2013, Dr. Mahgoub prepared an RFC assessment and opined that Plaintiff was limited to lifting less than 10 pounds and standing/walking less than two hours per work day. AR at 613. Dr. Mahgoub based her opinion on her observations of Plaintiff's "severe lower back pain" and "mild posterior disc protrusion" in his L4-L5 vertebrae. AR at 613. Dr. Mahgoub's opinion conflicted, in part, with the ultimate conclusion that Plaintiff was not disabled.

The ALJ, in assessing Plaintiff's RFC evaluation, mistakenly concluded that the RFC analysis had been completed by a nurse practitioner, rather an individual meeting the statutory definition of a treating physician. AR at 27. In so doing, the ALJ failed to apply the treating physician rule to determine whether Dr. Mahgoub's opinion regarding Plaintiff's RFC was entitled to controlling weight as required by the applicable authorities. *Settles*, 121 F. Supp. 3d at 169.

The undersigned finds that Defendant's contention that the ALJ's failure to apply the treating physician rule constitutes "harmless error" is without merit and unsupported by the case law of this court and the District of Columbia Circuit.[4] While the ALJ outlined some findings comparing the RFC to Plaintiff's entire medical record, it is clear that the ALJ intentionally discounted the RFC analysis of Dr. Mahgoub, because his assumption that the RFC assessment had been completed by a "treating nurse practitioner," rather than Plaintiff's treating physician. AR at 27. Without substantial evidence to the contrary, Dr. Mahgoub's opinion was binding on

---

[4] The undersigned finds no authority to support the application of the "harmless error" standard to actions for review of a denial of disability benefits by an ALJ. Thus, the undersigned makes no finding with respect to the argument that the error here can be deemed "harmless[.]"

the ALJ. *See Settles*, 121 F. Supp. 3d at 169 (internal citation omitted). However, Defendant has made no such showing of contradictory evidence in the record. Therefore, the undersigned is unable to conclude that the ALJ's failure to consider Dr. Mahgoub's opinion under the treating physician rule was harmless, or that the ALJ's determination was free of error and made in accordance with the applicable statutory authority. As such, the court will remand this case to the Social Security Administration for re-evaluation of Dr. Mahgoub's opinion in accordance with the applicable authorities of this jurisdiction.[5]

**CONCLUSION**

For the reason set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 15) will be granted in part. Defendant's Motion for Judgment of Affirmance (ECF No. 16) will be denied, and this case will be remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion, by order filed contemporaneously herewith.

Date: March 30, 2017

_____/s/_____
DEBORAH A. ROBINSON
United States Magistrate Judge

---

[5] In light of this determination, the court will make no further findings with regard to Plaintiff's additional claims at this time, anticipating that they will be addressed on remand after proper application of the treating physician rule.